LYDIA CARLE *vs.* HARRIETT O. LADD and Trustees.

ASA CARLE *vs.* HARRIETT O. LADD.

Piscataquis. Opinion February 26, 1914.

*Account. Agent. Agreement for Sale. Contract. Copartnership. Husband and Wife. Lumbering Operations. Mortgage.*

In the fall of 1911, Mark P. Ladd, husband of the defendant, his son Fred, and Asa Carle entered into a partnership agreement to carry on a lumbering operation. Mr. Ladd negotiated with the owner of a lot near his home for the soft wood lumber standing thereon, and procured a conveyance of it to his wife, the defendant, she giving back to the owner a mortgage for $700, the full purchase price. A contract in writing was made with two men by the name of Bennett, for the purchase by them of said lumber. The defendant, and also Mr. Ladd, his son Fred, and Mr. Carle signed said contract. In the contract, it was stipulated that the Bennetts should retain in their hands, for the grantees in said mortgage, $1.00 per cord on all lath stock and $3.50 per thousand feet on all logs until the sum of $700, the amount of the mortgage given by the defendant, was thus accumulated.

*Held:*

1. Mrs. Ladd could not be held liable in these actions on the ground that she was a partner in the lumbering operation with her husband, son, and Carle, and thereby became liable for these debts contracted by the partnership. And that is not really claimed.

2. The only ground on which the defendant's liability in these actions is predicated is the theory that Mrs. Ladd was carrying on the lumbering operation as her business and that her husband was her agent in dealing with the Carles, and bound her by his agreement with Mr. Carle to pay these claims in suit. But the court is constrained to the opinion from a careful consideration and examination of all the evidence that it is clearly insufficient to justify the jury in so finding.

On motion by defendant for new trial. Motion in each case sustained.

These two actions, tried together, are assumpsit on account annexed to the writ. In the case of *Lydia Carle* v. *Harriett O. Ladd,* plaintiff sued for board of laborers and in the case of *Asa Carle* v. *Harriett O. Ladd,* the plaintiff sued for labor and money paid to laborers. In the fall of 1911, Mark P. Ladd, husband of the defendant, Fred Ladd, his son, and Asa Carle entered into a partnership agreement for the purpose of conducting a lumbering operation. The defendant purchased of W. D. Hutchins Company, a corporation, the soft wood lumber on a certain farm in Sangerville, and gave back a mortgage to W. D. Hutchins Company for $700, being the entire purchase price. The defendant with her husband and son and Mr. Carle entered into a contract with Freeman H. Bennett and Galen H. Bennett, owners of a mill in the vicinity, for the sale of the lumber aforesaid. In said contract, it was provided that the said Bennetts were to hold in their hands for W. D. Hutchins Company, grantees in said mortgage, one dollar per cord on all lath stock and $3.50 per thousand on all logs, until they had the sum of $700, the amount of the mortgage secured upon said timber. In accordance with the partnership agreement, Asa Carle, plaintiff in one of said actions, took charge of the lumbering operations, devoted his time and labor to it until about the middle of January, 1912, when a disagreement arose and he, the said Carle, took no further active part in the operation.

The plaintiffs in said actions seek to hold the defendant liable on the ground that she was carrying on the lumbering operation, as

her business and that her husband, Mark P. Ladd, was her agent in dealing with the Carles.

The plea in each case was the general issue. The jury returned a verdict in the case of *Lydia Carle* v. *Harriett O. Ladd,* for the plaintiff for $73.06; and in the case of *Asa Carle* v. *Harriett O. Ladd,* for the plaintiff for $137.82. The defendant filed a general motion in each case for a new trial.

The case is stated in the opinion.

*Hudson & Hudson,* for plaintiffs.

*L. B. Waldron, and P. A. Hasty,* for defendants.

SITTING: SAVAGE, C. J., SPEAR, KING, HALEY, HANSON, PHIL-BROOK, JJ.

KING, J. In these cases the respective plaintiffs are husband and wife, and the defendant is the wife of Mark P. Ladd. The action by Mrs. Carle is to recover for boarding certain laborers who worked in a lumbering operation, and that by Mr. Carle is to recover for his own labor and money paid to laborers in the same operation. In each case the verdict was for the plaintiff which the defendant moves this court to set aside as being against the evidence. No question was raised as to the items sued for in either action, and the real issue was the defendant's liability therefor.

It appears that Mr. Ladd, contemplating a lumbering operation on a lot of land near his home, negotiated with the owner of the lot for the soft wood lumber standing thereon and procured a conveyance of it to Mrs. Ladd, she giving back to the owner a mortgage for $700, the full price for the growth. Mr. Ladd and Mr. Carle entered into an arrangement whereby the lumbering operation was to be carried on by a partnership in which Mr. Carle was to share one-half of the profits and losses and Mr. Ladd and his son the other half. Mr. Carle knew of the contemplated purchase of the growth on the lot, examined and estimated it with Mr. Ladd, and considered and discussed the partnership, previous to the purchase of the growth, and indeed the evidence seems to leave little doubt that he actually made the partnership arrangement before the conveyance of the growth to Mrs. Ladd, for that was dated October 25, 1911, and he says that he actually began work in the woods on that day.

Mrs. Ladd knew that the partnership was made between her husband and son on the one side, and Mr. Carle on the other, for operating on the lot. A contract for the sale of the logs and other lumber to be cut on the lot was made with the Bennetts, owners of a mill nearby. That contract was in writing and nominally between Mrs. Ladd of the first part and the Bennetts of the second part. It stipulated, in addition to the terms of the sale and delivery of the lumber, that the Bennetts should hold back in their hands $1.00 per cord on all lath stock and $3.50 per thousand feet on all logs until the sum of $700, the amount of the mortgage given by Mrs. Ladd for the growth, was thus accumulated. It also stipulated that at least 200,000 feet of logs and 50 cords of lath stock should be delivered in the winter of 1911-12. This written contract was also signed by Mr. Ladd, his son and Mr. Carle, and contained the following paragraph: "M. P. Ladd and F. E. Ladd and Asa Carle, by their signature hereto, acknowledge that they are parties to this contract for the cutting and hauling of said logs and lath stock and hereby waive any and all labor liens which might otherwise arise."

Pursuant to the partnership agreement Mr. Carle took charge of the operation devoting his personal labor to it until about the middle of January, 1912. Mrs. Carle boarded some of the laborers. Mr. Ladd purchased supplies in his own name, and Mr. Carle took some of them home to be accounted for in final settlement.

On January 16, 1912, Carle and Ladd, disagreeing about some details of the work, had a conversation as the result of which Carle took no further active part in the operation. He thus stated his version of the important part of that conversation: "and finally I told him he might pay me up what I had in it and he might run it as he had a mind to; and he said, 'All right, how much do you want?' I said, 'Pay me what you pay the other men.' He said, 'All right, just as soon as I can draw some money from the company I will pay you.' I told him my wife would want the pay for the men boarded; and he said 'All right;' and he would come out to see her; and I sold out to him. He said the first money he could draw he would pay me a part of it."

Mr. Ladd's version of the arrangement is different. He stated, in substance, that he told Carle that if he dropped out he would not be entitled to anything, but, nevertheless, he would go on with the

work and if there was anything coming after the other bills were paid he would divide with him until he got what he had put in. But in considering these motions to set aside the verdicts the court will assume that the jury were justified in accepting Mr. Carle's statement that Mr. Ladd agreed to pay him for his labor and what he had otherwise put in, and also to pay Mrs. Carle for boarding the men.

It is not contended, as we understand, and there would be no merit in such contention, that Mrs. Ladd is liable in these actions on the ground that she was a partner in the lumbering operation with her husband, son, and Carle, and thereby became liable for these debts contracted by the partnership. *Haggett* v. *Hurley,* 91 Maine, 542.

The only ground on which the defendant's liability in these actions is predicated is the theory that Mrs. Ladd was carrying on the lumbering operation as her business, and that her husband was her agent in dealing with the Carles, and bound her by his agreement with Mr. Carle to pay these claims in suit. We think there was no sufficient evidence to sustain that theory.

The jury failed apparently to appreciate, or to be governed by, the true relation of Mrs. Ladd to this lumbering operation. She had no active part in it from the beginning. It was proposed, planned, and carried on by her husband in company with Mr. Carle as their business, not hers. The title to the growth was taken in her name, and she became responsible for its purchase price, to assist her husband. She signed the agreement for the sale of the lumber to the Bennetts, "Because my husband wanted me to sign it." Holding the legal title to the growth she permitted her husband and Carle to remove it and sell it, stipulating only that the $700 for which she was liable should be left with their vendees. Her real relation to this lumbering operation was much like that of an ordinary permitter of growth in lumbering operations. She was interested for herself only to the extent that the $700 for which she was liable should be secured from the sale of the lumber.

It was not claimed that Mrs. Ladd had ever said to either of the plaintiffs that her husband was her agent in carrying on the lumbering operation, or that it was her business. There was no conversation touching the subject between her and Mrs. Carle at any time,

and all that Mr. Carle recalled that the defendant ever said to him or in his presence was that when he was at Mr. Ladd's house for supplies she would ask how they were getting on with the work.

It is urged that when Mrs. Ladd was asked if she ever authorized her husband to act as her agent she answered "Yes," and being asked, when and how, she said, "When they began on this lumbering operation. . . . I simply asked him to see about it; go ahead and see that the work was carried on." But we do not think that statement justified the jury in finding that her husband was her agent in carrying on that lumbering operation. She had legally assumed some obligations by signing the agreement with the Bennetts, and she was responsible for the $700, and being thus interested it was both natural and proper that she should ask her husband to see that the work was carried on. She stated that she had nothing to do with the operation, was never consulted about it, and knew nothing about the details of it, and Mr. Ladd also testified that he was not acting as agent for his wife in these transactions.

Finally, Mr. Carle's own statement of the conversation with Mr. Ladd by which, as he now claims, Mrs. Ladd was made liable for these bills sued, shows quite conclusively, we think, that he was then contracting with Mr. Ladd personally, and not with Mrs. Ladd through Mr. Ladd as her agent. His then understanding of the arrangement and the party with whom it was made was clearly and concisely expressed by him at the trial in these words: "and I sold out to him." Mrs. Ladd was not referred to in the conversation by either party, and it is an admitted fact, of no little significance in this connection, that Mr. Carle never saw Mrs. Ladd after he quit the work, or had any communication with her touching this matter.

It is the opinion of the court that the verdicts in these cases are unmistakably erroneous, and that they should be set aside. Accordingly the entry in each case will be,

*Motion sustained.*